# NO. 12-08-00207-CV

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *THE STATE OF TEXAS* | § | *APPEAL FROM THE* |
| *FOR THE BEST INTEREST* | § | *COUNTY COURT AT LAW* |
| *AND PROTECTION OF R.L.* | § | *CHEROKEE COUNTY, TEXAS* |

---

## *MEMORANDUM OPINION*

R.L. appeals from an order of commitment for temporary inpatient mental health services and an order to administer psychoactive medication. After a hearing without a jury, the trial court ordered R.L. committed to Rusk State Hospital for a period not to exceed ninety days and entered an order authorizing the Texas Department of Mental Health and Mental Retardation[1] to administer psychoactive medication to R.L. In two issues, R.L. asserts the evidence is legally and factually insufficient to support the orders. We affirm.

## BACKGROUND

On April 24, 2008, an application for court ordered temporary mental health services was filed requesting the court commit R.L. to Rusk State Hospital for a period not to exceed ninety days. The application was supported by a certificate of medical examination for mental illness, prepared by a physician, Dr. Larry Hawkins, who had examined R.L. on April 23. Dr. Hawkins diagnosed R.L. as suffering from paranoid schizophrenia. He found that R.L. is mentally ill and likely to cause

---

[1] The Texas Department of Mental Health and Mental Retardation was abolished in 2003. *See* Act of June 2, 2003, 78th Leg., R.S., ch. 198, § 1.26, 2003 Tex. Gen. Laws 611, 641. The state hospital programs are now under the auspices of the Department of State Health Services. *See* Act of June 2, 2003, 78th Leg., ch. 198, § 1.19, 2003 Tex. Gen. Laws 611, 636.

serious harm to himself. He also found that R.L. is suffering severe and abnormal mental, emotional, or physical distress, is experiencing substantial mental or physical deterioration of his ability to function independently, which is exhibited by his inability to provide for his basic needs, and is unable to make a rational and informed decision as to whether or not to submit to treatment.

Dr. Hawkins reached these conclusions because, on April 23, R.L. was evasive and guarded, had paranoid delusions, and believed the police were persecuting him. R.L. had been getting into repeated trouble with police for public intoxication and trespassing and is unable to care for his basic needs. For those same reasons, Dr. Hawkins also determined that R.L. presented a substantial risk of serious harm to himself or others if not immediately restrained.

On April 28, 2008, R.L. was examined by Dr. G. Paul Kula who then also prepared a certificate of medical examination for mental illness. Dr. Kula diagnosed R.L. with schizophrenia, paranoid type, and alcohol abuse. He also indicated that R.L. is mentally ill and likely to cause serious harm to himself. He further determined that R.L. is suffering severe and abnormal mental, emotional, or physical distress, is experiencing substantial mental or physical deterioration of his ability to function independently, which is exhibited by his inability to provide for his basic needs, and he is unable to make a rational and informed decision as to whether or not to submit to treatment. Dr. Kula further determined that R.L. presents a substantial risk of serious harm to himself or others if not immediately restrained, as demonstrated by R.L.'s behavior and evidence of severe emotional distress and deterioration in his mental condition to the extent that he cannot remain at liberty. He came to these conclusions because R.L. was guarded and evasive and said police were persecuting him. Also, R.L. was paranoid and psychotic and had repeated contacts with police for public intoxication and trespassing. Dr. Kula further stated R.L. is unable to care for himself.

Dr. Hawkins testified at the hearing, explaining that he diagnosed R.L. with schizophrenia, paranoid type. He testified that R.L. is likely to cause serious harm to himself, and is suffering severe and abnormal mental, emotional, or physical distress to the extent that he is unable to provide for his basic needs and make a rational decision whether to submit to treatment. He explained that he came to these conclusions based on a pattern of behavior that lasted at least three or four weeks, and probably longer. R.L. was arrested about three times, over a three week period, for trespassing.

2

He was living in an abandoned house and kept returning there. He made those judgments and is unable to care for himself in the community in a reasonable manner because he is quite paranoid and suspicious, and believes the police are persecuting him. He explained that R.L. is very evasive and guarded and has not been able to meet his own needs in the community, take care of himself, or keep himself out of trouble with the police. Many of these problems are due to his refusal to take medication. The doctor believes that all of these behaviors are connected to his mental illness. He explained that R.L. does not intentionally attempt to harm himself, but is just not making good judgments to take care of himself and to stay out of difficulties in the community. Dr. Hawkins is not aware of any family support and believes R.L. will further deteriorate without treatment. The doctor does not believe R.L. is able to manage to get food and clothing for himself very well. The doctor's diagnosis was based on his personal examination of R.L., a review of R.L.'s medical history, and reasonable medical probability. He explained that R.L. might need to stay in the hospital three or four weeks after beginning medication and that Rusk State Hospital is the least restrictive available medical treatment option at this time.

On cross examination, Dr. Hawkins testified that an overt act is going back to the same place and getting arrested for trespassing. He considers that to be harming R.L. in a serious manner because he has repeatedly not sought the help he needs and even in the hospital refuses treatment. When pressed, the doctor further explained that it is more likely than not that R.L. will be harmed because he puts himself in a situation where he is in an abandoned house that does not belong to him and the owner might harm him. Dr. Hawkins also testified that R.L. has made verbal threats to harm himself and made comments to females regarding his sexual desires. The doctor stated that R.L. does not require assistance or prompting to clothe himself within the structured setting. However, the doctor believes R.L. requires assistance or prompting to clothe himself outside the hospital setting. He does not believe R.L. can act appropriately in a restaurant to get service or would know to get attention for a broken arm. He might be able to make a peanut butter and jelly sandwich if he had what he needed to do so. Because his judgment is so impaired, he might not know the inherent dangers of sitting on a fire ant hill. He makes irrational decisions about many things. The doctor said R.L. would not stay in a structured setting like the Salvation Army or a nursing home, and he is currently not on medication. Without medication, R.L. will need to stay at Rusk State Hospital

3

the full ninety days if committed.

On redirect examination, Dr. Hawkins explained that, before he was hospitalized, R.L. was not taking appropriate care of himself. He was not eating properly and he put himself in harm's way by being in abandoned facilities. He has not exhibited the ability to provide proper shelter for himself. The doctor thinks R.L. is a risk to himself. The longer he goes without medication, the more he deteriorates. He has a history of injury to others when he has deteriorated further than he has now. Therefore, he needs to be in the hospital if he is not being medicated.

On recross examination, Dr. Hawkins clarified that "there was a murder" about twenty years ago. The recent trespass occurred when he lived inside a structure without permission. The doctor also acknowledged that, although it was illegal, he was providing himself with shelter. When R.L. arrived at the hospital, he was not seriously malnourished or dehydrated. But it is hard to know if he was providing himself with food and water because he was in jail before he came to the hospital. Dr. Hawkins stated that R.L. was in adequate physical health.

R.L. testified in his own behalf. He said he does not agree with Dr. Hawkins's testimony and has never tried to hurt himself. He has not intentionally, but maybe generally, tried to hurt others. He explained that he gets a social security disability check and has been renting a place in Beaumont for about five years where he lives alone. R.L. testified that he has been arrested twice for public intoxication and once for trespassing. He explained that the trespassing arrest occurred at an abandoned place near where he lives. He wanted to purchase a piece of property, but someone beat him to it. He had met the owner some time ago. He had not been going in and out of people's places, but he did get curious and enter this one place because he might want to buy it if he could. He does not have a checking account. He does his own cleaning, shopping, and cooking, although sometimes a neighbor fixes him a plate of food. He said he planted some potatoes and last year he raised some chickens. For clothing, he goes to resale shops or to the places that give clothes away. He does not have a doctor he sees regularly, but a doctor came to his place. He has seen a psychiatrist for evaluation. He said he loves to socialize and sometimes goes somewhere to meet people. Basically, he hangs around his place and there are girls that come around his place now and then. If he had a broken arm, he would call E.M.S. If he had a stomach ache that would not go away, he would go see a doctor. He said it would not be wise to sit on a fire ant hill because they

4

will bite and it would be painful. He said that would be stupid. He said he would like to be discharged and returned to his place in Beaumont.

On cross examination, R.L. said his history of mental illness has changed over the years. The last time he was at Rusk State Hospital was over a year ago. The Jefferson County sheriff sent him there because he was intoxicated. He said he was released off his medication and back to the community and that he has been doing fine. He clarified that the doctors had suggested that he take a medication for his thyroid, but he did not have to take medications for his mental illness. He said he did not take the thyroid medicine. Prior to coming to Rusk State Hospital last year, he was treated at a halfway house where they gave him medication. He was at Vernon State Hospital about ten years ago. The last time he was there, he stayed about two years. He claimed to have been set up on the murder charge, which happened a long time ago. He was found not guilty by virtue of insanity and he did more than two years, which he felt was too much time for it. He said he was not necessarily guilty, but not blaming it on insanity. He testified that, about ten years ago, he was recovering from his mental illness. Today he is of sound mind and body. He believes he has good mental health. Regarding his arrest for trespassing, he said there can be different reasons for that, like looking for another place. He said some of the places are available and the place had been abandoned for quite some time. He explained there was a discrepancy about who could give him permission to be there and why he was actually picked up for trespassing. He said there absolutely may not be any criminal charge whatsoever for trespassing because of the real estate situation in that area. He said somebody called the fire department twice when he cooked outside. But as for why the police were called, he said "it looks like somebody in the neighborhood is too busy on the phone." He denied currently needing any treatment for mental illness. He said he had a mental illness in the past, but it cleared up. He also stated that his diagnoses have changed over the years.

When asked if he thought he had permission to go to that property, he said "yes and no." In explanation, he said it was implied by rumor that he had permission to be on the property. He said he understands that he could get harmed if he goes onto someone's property without permission and he does not usually make it a practice.

The trial court entered an order for temporary inpatient mental health services after determining that the evidence supports the allegations that R.L. is mentally ill and that he is likely

to cause serious harm to himself. The court also found that R.L. is suffering severe and abnormal mental, emotional, or physical distress, experiencing substantial mental or physical deterioration of the ability to function independently, and is unable to make a rational and informed decision as to whether to submit to treatment. The court ordered R.L. committed to Rusk State Hospital for a period not to exceed ninety days.

A separate hearing was then held on the State's application for court ordered administration of psychoactive medication. Dr. Hawkins testified that R.L. is under an order for temporary mental health services and has refused to accept medication. He stated that R.L., who suffers from schizophrenia, paranoid type, lacks the capacity to make a decision regarding the administration of psychoactive medications. The doctor believes that the requested medications are in the proper course of treatment for R.L. and in his best interest. If treated, the patient will benefit, the benefits outweigh the risks, and R.L.'s hospital stay will likely be shortened.

On cross examination, Dr. Hawkins said R.L. does not believe he is mentally ill or that he needs medicine. Hospital personnel would watch him for side effects and change the medication if necessary. The doctor stated that there are no alternatives to medication that could render the same or similar results for R.L.'s illness. He explained that it could take three to four weeks of treatment to get a response adequate for release from the hospital.

R.L. testified, explaining that he would rather not have psychotropic medications because they result in side effects that cause discomfort. He said that he previously experienced numerous side effects. He also explained that if he thought he really needed those medications, he would not mind taking them. He stated that he had been taking calcium, which gave him extra energy and motivation and made him feel more stout and stronger. And he does not mind taking antibiotics for the flu. At the close of evidence, the court entered an order to administer psychoactive medication for the period of temporary commitment.

### SUFFICIENCY OF THE EVIDENCE

In his first issue, R.L. asserts the evidence is neither legally nor factually sufficient to support the order of commitment. He argues that the evidence does not show an overt act or continuing pattern of behavior tending to confirm that he is likely to cause serious harm to himself or would be

6

unable to provide for his basic needs. Thus, he argues, the State failed to meet its evidentiary burden under the statute.

In his second issue, R.L. asserts the evidence is legally and factually insufficient to support the order authorizing administration of psychoactive medication. He argues that because the order for commitment was not supported by sufficient evidence, that order is not valid and the order for administration of psychoactive medication cannot stand. He further argues that the State did not present evidence that he lacks the capacity to make a decision regarding the use of psychoactive medication or that treatment with the proposed medication is in his best interest.

**Standard of Review**

In a legal sufficiency review where the burden of proof is clear and convincing evidence, the reviewing court must consider all of the evidence in the light most favorable to the finding to determine whether a reasonable trier of fact could have formed a firm belief or conviction that its finding was true. *In re J.F.C.*, 96 S.W.3d 256, 266 (Tex. 2002). The reviewing court must assume that the factfinder resolved disputed facts in favor of its finding if a reasonable factfinder could do so. *Id.* A court should disregard all evidence that a reasonable factfinder could have disbelieved or found to have been incredible. *Id.*

In addressing a factual sufficiency of the evidence challenge, we must consider all the evidence in the record, both that in support of and contrary to the trial court's findings. *In re C.H.*, 89 S.W.3d 17, 27-29 (Tex. 2002). This court must give due consideration to evidence that the factfinder could reasonably have found to be clear and convincing. *Id.* at 25. We must determine whether the evidence is such that a factfinder could reasonably form a firm belief or conviction about the truth of the State's allegations. *Id.* We must consider whether disputed evidence is such that a reasonable trier of fact could not have reconciled that disputed evidence in favor of its finding. *In re J.F.C.*, 96 S.W.3d at 266. Appellate courts retain deference for the constitutional roles of the factfinder. *In re C.H.*, 89 S.W.3d at 26. The trier of fact is the exclusive judge of the credibility of the witnesses and the weight to be given their testimony. *See id.* at 27; *In re J.J.O.*, 131 S.W.3d 618, 632 (Tex. App–Fort Worth 2004, no pet.).

**Commitment Order**

The trial judge may order a proposed patient to receive court ordered temporary inpatient

mental health services if the judge or jury finds, from clear and convincing evidence, that the proposed patient is mentally ill and, as a result of the mental illness he is likely to cause serious harm to himself, is likely to cause serious harm to others, or is (i) suffering severe and abnormal mental, emotional, or physical distress, (ii) experiencing substantial mental or physical deterioration of his ability to function independently, which is exhibited by his inability, except for reasons of indigence, to provide for his basic needs, including food, clothing, health, or safety, and (iii) unable to make a rational and informed decision as to whether or not to submit to treatment. TEX. HEALTH & SAFETY CODE ANN. § 574.034(a) (Vernon 2003). To be clear and convincing under the statute, the evidence must include expert testimony and, unless waived, evidence of a recent overt act or a continuing pattern of behavior that tends to confirm either the likelihood of serious harm to the proposed patient or others, or the proposed patient's distress and the deterioration of his ability to function. TEX. HEALTH & SAFETY CODE ANN. § 574.034(d) (Vernon 2003).

The State provided expert testimony explaining that R.L. is mentally ill. Dr. Hawkins described a pattern of behavior involving a recurring poor decision to attempt to live on property that does not belong to him, which resulted in repeated arrests for trespassing. This behavior exhibits R.L.'s inability to find proper shelter even though he receives social security checks and the inability to understand that his actions are inappropriate and lead to negative consequences. Dr. Hawkins testified that R.L. does not make good judgments to take care of himself, is not able to get food and clothing for himself very well, and he does not get the help he needs. His judgment is impaired and he makes irrational decisions. Further, without medication, he will continue to deteriorate.

Thus, the record contains expert testimony of a recent continuing pattern of behavior, repeatedly returning to an abandoned house to live even though he is repeatedly arrested for trespass, that tends to confirm R.L.'s distress and the deterioration of his ability to function as exhibited by his inability to provide for his basic needs, including health and safety. *See **K.L.M. v. State***, 735 S.W.2d 324, 326 (Tex. App.–Fort Worth 1987, no writ). The trial court could have disbelieved R.L.'s testimony to the contrary. *See **In re J.F.C.***, 96 S.W.3d at 266.

Considering all the evidence in the light most favorable to the findings, we conclude a reasonable trier of fact could have formed a firm belief or conviction in the truth of the findings that R.L. is likely to cause serious harm to himself and is suffering severe and abnormal mental,

8

emotional, or physical distress, and is experiencing substantial deterioration of his ability to function independently, exhibited by his inability to provide for his basic needs. *Id.* The evidence presented satisfies the statutory requirement for clear and convincing evidence in support of the order for temporary inpatient mental health services. *See* TEX. HEALTH & SAFETY CODE ANN. § 574.034(d). The evidence is legally sufficient to support the trial court's order. *See In re J.F.C.*, 96 S.W.3d at 266.

In addressing R.L.'s factual sufficiency complaint, we consider the evidence the factfinder could reasonably have found to be clear and convincing. *In re C.H.*, 89 S.W.3d at 25. R.L. testified that he rents the place he lives in and was arrested only once for trespassing at an abandoned place he had considered purchasing. He also said he knew he could get harmed if he is on someone else's property without permission. The trial court was entitled to disbelieve R.L.'s testimony and disregard evidence contrary to the State's position. *See id.* at 27. In light of the entire record, the evidence that the trial court could not have credited in favor of its findings is not so significant that it could not reasonably form a firm belief or conviction that R.L. is likely to cause serious harm to himself and is suffering severe distress, and experiencing substantial deterioration of the ability to function, that is, to provide for his health and safety needs. *See id.* Thus, the evidence is factually sufficient to support the trial court's finding. Because we hold the evidence is both legally and factually sufficient to support the trial court's order, we overrule R.L.'s first issue.

**Psychoactive Medication**

The court may enter an order authorizing the administration of psychoactive medication if it finds by clear and convincing evidence that the patient is under an order for inpatient mental health services, the patient lacks the capacity to make a decision regarding the administration of the proposed medication, and treatment with the proposed medication is in the best interest of the patient. TEX. HEALTH & SAFETY CODE ANN. § 574.106(a-1) (Vernon Supp. 2008). The Health and Safety Code defines capacity as a patient's ability to understand the nature and consequences of a proposed treatment, including the benefits, risks, and alternatives to the proposed treatment, and make a decision whether to undergo the proposed treatment. TEX. HEALTH & SAFETY CODE ANN. § 574.101(1) (Vernon 2003).

As we determined that the order for commitment is supported by legally and factually

9

sufficient evidence, R.L.'s argument to the contrary is without merit. Dr. Hawkins testified that R.L. was, at the time of the hearing, under an order for temporary mental health services due to his schizophrenia and refuses to accept medications voluntarily. The doctor stated that R.L. lacks the capacity to make a decision regarding the administration of psychoactive medication. The requested medications are in the proper course of treatment and are in R.L.'s best interests, the benefits outweigh the risks, and his hospital stay will likely be shortened if medications are used. Further, there are no alternatives to medication to treat R.L.'s illness.

Considering all the evidence in the light most favorable to the findings, we conclude a reasonable trier of fact could have formed a firm belief or conviction that R.L. lacked the capacity to make a decision regarding administration of the proposed medication and that the treatment with the proposed medication is in R.L.'s best interest. *See In re J.F.C.*, 96 S.W.3d at 266. This evidence satisfies the statutory requirement for clear and convincing evidence in support of the order for administration of psychoactive medication. *See* TEX. HEALTH & SAFETY CODE ANN. § 574.106(a-1). The evidence is legally sufficient to support the trial court's order. *See In re J.F.C.*, 96 S.W.3d at 266.

In addressing R.L.'s factual sufficiency complaint, we consider all the evidence, giving due consideration to evidence the factfinder could reasonably have found to be clear and convincing. *In re C.H.*, 89 S.W.3d at 25. R.L. testified that he chooses not to take medication because it has adverse side effects. Dr. Hawkins assured the court that the hospital has medical personnel monitoring R.L. and, if he were to experience adverse side effects from the medication, they would change his medication. In light of the entire record, the evidence that the trial court could not have credited in favor of its findings is not so significant that the trial court could not reasonably form a firm belief or conviction that R.L. lacks the capacity to make a decision regarding the administration of the proposed medication and that treatment with the proposed medication is in his best interest. *See id.* Thus, the evidence is factually sufficient to support the trial court's findings. *See* TEX. HEALTH & SAFETY CODE ANN. § 574.106(a). Because we hold the evidence is both legally and factually sufficient to support the trial court's order to administer psychoactive medication, we overrule R.L.'s second issue.

## CONCLUSION

The evidence is legally and factually sufficient to support the trial court's order of commitment for temporary inpatient mental health services and the order for administration of psychoactive medication.

We *affirm* the trial court's orders of commitment for temporary inpatient mental health services and for administration of psychoactive medication.

  SAM GRIFFITH  
Justice

Opinion delivered October 31, 2008.
*Panel consisted of Worthen, C.J., Griffith, J., and Hoyle, J.*

(PUBLISH)